The next case on the calendar is Lockhart v. MTA Long Island Railroad. May it please the Court, good morning. My name is Charles Goetsch and I'm here for the Plaintiff Appellant Henry Lockhart. When it comes to the operation of railroads, what is more important, safety or discipline? The answer to that question is found in the text of Section 2109 of the Federal Rail Safety Act. And the stated purpose of the Federal Rail Safety Act is to, quote, promote safety in every area of railroad operations. And 2109, the whistleblower provision, promotes safety by prohibiting employers, railroads, from disciplining employees who engage in a wide spectrum, over a dozen safety-related protected activities. So when interpreting and applying this important federal remedial safety legislation, the North Star must always be, view the section as a whole, harmonize all of its subparts, in order to accomplish its overriding purpose, to promote safety in all aspects of railroad operations. Mr. Goetsch, nice to see you again, but I follow your argument and tend to agree with it, except that your client did not fill out the SLA-128, I believe it's SLA-128 form. What is your argument with regard to the fact that your client never asserted this in the way the railroad required? Because we're talking about two different animals, Your Honor. Sick leave is a creature of the collective bargaining agreement. It has its own policy forms and so on. What we're talking about here is a federal statutorily protected safety absence. It's not sick leave. It's not governed by the collective bargaining agreement. Wait, wait. Look, I have some problems as to whether A-1, A-2, or B-1 apply at all. Can I hear the answer to my question? I'm sorry. Yeah, so what happened here, Your Honor, is that the Long Island Railroad, for 10 years, engaged in deliberate ignorance of the Federal Rail Safety Act, from the vice president on down, completely ignorant, no policy, no forms, no codes, no instruction, no training at all, and say, well, we've ignored this statute. We consider all absences to be sick leave. We're going to apply the sick leave policy to all absences, and they've ignored the federal statutory protected absences under 2109. He took an absence, and he's presumed to know that he has to fill out a form, SLA-28, which is accompanied by a doctor's certificate. Your argument seems to say that it's retaliation for the railroad to discipline someone for absenteeism and that somehow a court has to accept as true the assertions that the person was actually sick or took medicine disabling him from being able to operate a locomotive. He reported the hazardous safety condition of the fact that he had been prescribed a legal medication and instructed not to work for 48 hours under the influence of that medication. He reported that to the only department on the railroad that was competent to instruct him whether or not to work under that medication, the medical department. He did that. He was prescribed by his doctor. He called the medical department. He told him he was doing it. He followed their instructions. Now, the — Fill out an SLA-28. That asks for all the information you're giving me. No, it does not, Your Honor. It's a sick policy form. Subsection H of the 2109 specifically says that an employee's statutory rights cannot be waived or negated by any railroad policy or form. Does SLA-28 require a waiver? I'm sorry? Where does SLA-28 require a waiver? The railroad's position is they've ignored any safety absences protected by 2109. They apply the sick leave policy, a collective bargaining policy, to all absences, say here's the form for sick leave. If you don't fill it out, then your right, your statutory right to have an absence protected is waived. It's negated. They don't recognize it. Subsection H prohibits a railroad. Why isn't SLA-28 simply a reporting? I'm having difficulty understanding the concept of waiver. So you have to just tell us. Give us the documentation that you have a medical reason to be out. And we will, you know, we're not going to discipline you for that. We just need record documentation of the absence. Right, but it's not. So why is that a waiver? Because it's not a 2109 policy or form. It doesn't ask is this condition going to affect your ability to safely perform your railroad duties. Look, if I may, C-2 says you may not be punished for following a doctor's instruction. Why isn't it implicit in that that a reasonable way for the company to assure itself that a doctor's instruction is actually being followed, a perfectly proper requirement of that section, having nothing to do with the waiver of saying you are accusing me of disciplining, you're accusing me of being out without reason and you're disciplining me for no reason. And why can't the company simply ask, show that you had a doctor's order. Now, is the form reasonable or not as a way of proving that? That may be a question. But your argument is that they can do nothing, that they have to take the person's word that he is following a doctor's order, and that seems to me, you know, I just don't understand. No, Your Honor, the railroad, this is a federal safety statute. They have to comply with it. Long Island has done nothing for 10 years. If they have a policy, if they have a form, if they have a code to invoke these statutory rights, if they train and instruct managers to say, hey, this is protected activities, this is what you can't do, if they enable Henry Lockhart and employees to invoke their rights under an FRSA policy, form, and code, fine. That's what should happen. But this is sick leave. It's not a federally protected statute of absence. Let me try to understand. Your argument is that the form that they had filled out was not a proper form or was not a proper way for them to assure themselves that this was following doctor's orders? I'm sticking just with C-2. Right, because take for instance. Is that your argument? It's a sick leave form, okay? It doesn't say, okay, this is a clerk who's filing papers versus a locomotive. Excuse me. The fact that it is a sick leave form does not necessarily mean that it isn't a perfectly appropriate way for them to be assured that you are actually following doctor's orders. There may be other forms, but the fact that it is a sick leave form does not in itself mean that it isn't an appropriate requirement. Maybe what we need is to find out whether this is an appropriate way of finding that out. But I don't see how you can be arguing that because this wasn't written up for the statute, that this isn't something that they have a right to ask. We're not saying that this is unlimited sick leave. That's not what 2109 does. If you have a medical condition that threatens the safety of railroad operations, then that should be a protected safety absence. But a clerk filing papers in a filing cabinet is not the same as a locomotive engineer with the lives of thousands of people in his hands. There should be a policy in place, a form that an employee can invoke and have a doctor confirm that this is indeed a safety absence, not just some sick leave absence that doesn't have anything to do with safe operations. The railroad here for 10 years, deliberate ignorance, they've just ignored it. And if this court says to railroads, well look, deliberate ignorance is a free pass on compliance with safety legislation, then we should all start taking the bus. I mean, you can't put employees in the position of choosing between protecting their livelihoods or protecting the lives of passengers, protecting their careers, their livelihood versus protecting passengers' lives. And the passengers in that train don't care if it's safety, a medical condition threatening their safety, if it happened on the job or off the job. I'm troubled because both you and opposing counsel and Amisai want us to discuss the broadest issues of great policy and cause. I'm just looking at the particular claim and whether this person has made out his claim that he was disciplined because he was following a doctor's order. I'm just looking at it very narrowly. And, well, the whole discussion, and it isn't only you today, Mr. Gertsch, because the other side and their brief and the Amisai are just as broad. But, you know, basically we decide cases. We don't decide causes. But just if I may, in this case, he reported the condition to the medical department of the railroad and followed their instructions. Why isn't that sufficient? That's knowledge given to the railroad of a protected activity because they've ignored the law. They don't coordinate that information amongst the transportation or labor. And so they claim, well, you know, we discipline him for a safety absence, but we're ignorant because we have no knowledge. The medical department never communicated to us. That cannot be a valid defense. Thank you. May it please the court. My name is Brian Saltz, SALTZ from the Long Island Railroad Law Department. Yes, this case does have major implications. But I will focus on this one individual and this one case. And this one individual, Henry Lockhart, did not meet the standards to be protected under the Federal Railroad Safety Act for several reasons. The first reason is that he did not engage in any protected activity. He has potentially three claims here. As I noted in my brief. Why did he not, assuming that it is true, engage in a protected activity in following a doctor's orders, that is C2, and disciplined for not doing that? That is, unless the form requirement, why isn't that engaged? Okay. Before we even get to the form requirement, there are two courts of appeals already who have made clear that C2 applies only when you're following the treatment instructions of a treating physician for one, an on-the-job injury or incident. So already, he's not. That isn't in the statute. It is not in the statute. It may be, you know, it may be there, it may not. But that becomes a secondary question of how we interpret this very difficult issue where you have the Department of Labor taking one position and two courts of appeal taking another one. But if your argument is that this person was deprived, was disciplined because he didn't show adequately that a doctor ordered it, why do we need to get into that? Okay. Well, that's only number .1 of why this statute does not apply to this individual. Secondly... Would that be true of the shoulder-related injury? Well, if we look at the doctor's notes, the doctor said... If we accept your interpretation of the statute. Okay. The doctor's note said he had a 2010 work-related knee injury and 2012 shoulder surgery. So, yes, it should apply there as well because the doctor's note itself doesn't refer to an on-the-job shoulder injury. So that's .1. And that's .1 for both... Was there any doubt that these injuries, the shoulder and so on, were job-related? Why does the doctor have to speak to that if there's no doubt that the injury was a work-related one? Because they're giving information to the railroad to make a decision on how to proceed. So let's assume for argument's sake that this doctor's note even came before the absences and before the discipline, which it did not, which is another one of the important points here. But you have the Long Island Railroad, a big organization, getting information and trying to make a decision on how to act. Now, Mr. Lockhart's counsel said there is deliberate indifference from the Long Island Railroad. That is not true. We know the statute. We've spent years trying to interpret the statute, trying to interpret it in a way to make sure that we're not doing anything that violates the statute. For a statute that's not written the best way, following up on the case law, going to conferences. But here, the Long Island Railroad gets information. Why isn't it written in the best way? Because it doesn't limit the injury or sickness to work-related? It doesn't give guidance. It's not just the statute. There are regulations. If we talk about the Family and Medical Leave Act, for instance, there is regulations, there's guidance, and it helps all employers determine how to proceed. That does not come out of the statute. So the Long Island Railroad, as best it can, is trying to determine how to proceed to protect its employees and also protect passengers, having people able to operate trains so that we don't have to call other people on overtime who may be tired to do work. But getting back to Mr. Lockhart, without trying to limit it rather than going broader, because the brief already talks about the broader implications. It seems to me you're making an argument that is playing right into his hands. I mean, he says this is in the sick leave case. And you're saying, oh, you're right, it's not a sick leave case because the injury wasn't work-related. The injury was not work-related. It's a sick leave, but it's a sick leave Federal Railroad Safety Act case, where we're complying with the law while also trying to make sure we're getting the information necessary. You're not complying with the law because it would apply to non-work-related illnesses? That is point one out of several points I have, is that none of these subsections apply to non-work-related illnesses. But I'll go beyond that to the next thing is... The statute does mention work-related. It does use the distinction between work-related and non-work-related in another section. I forget what the section is. It's in C2, I believe. C1 has work-related. C2 does not. And C2 is the claim that is being brought. Right. And the Courts of Appeals and every other court, I believe, to decide the issue has taken the position that... And the Department of Labor has taken the opposite position. Okay. Okay. So point one of the argument is that the statute... We don't even need to get into any of the other points because... What about A2? A2. So A2, refusing to violate an FRA regulation. What he's saying is he himself is an FRA regulation. So his argument, for instance, he... I don't understand that argument at all. Which argument? That he himself is... He's saying he himself is... That he himself would be violating an FRA regulation. It's not that the railroad did anything wrong. It's that if he came to work and operated a train, he would be violating it. If he takes up opioids the night before and shows up at work the next day, he is a hazard and a safety violation. Right. But take that to the next step, which is he got drunk the night before. He took illegal substances the night before. He stayed up late watching TV the night before. So many things. Let me try to understand. Is your argument that the railroad didn't tell him to operate the train while under drugs or alcohol? And if they had told him to do that and he had said no, then they would be violating the statute. But what they are punishing him for is taking the drugs or the alcohol, not for operating the train. Is that the argument you make? It's not. And what he does into a protected activity. The statute is meant to make sure the railroad, the railroad property, the railroad trains, that they're not violating any FRA regulations. If you see something wrong with the train, you have to tell someone and you can't be punished for it. May I go back to the form because that seems to me an awfully important thing. I'd like to know whether the form that you have to show that somebody is actually following doctor's orders is an appropriate form, a reasonable one, for those purposes. Let me finish. I'm not asking that the form have been written with that in mind, as Mr. Gertsch seems to be saying, because it may have been written with something else in mind if it is a proper form. But I want to know whether it is a proper form for fulfilling that which is the obligation that the statute puts on you. That's the question I'm asking. It is an absolutely proper form because without that form, the railroad would have no... The fact that it is without that form means that you have a right to have a form. It doesn't mean that this form is a proper one. If the form were to ask somebody to do it within 24 hours or were to do it in a way that might be relevant to something else but would impose an undue burden here, then the form would not be a proper form. I want to know whether the form as written and what it requires Mr. Lockhart to do is a proper form for giving you the information you need to know whether you are complying with the statute. It is proper. There's been no argument that the form didn't give Mr. Lockhart enough time or any other employee enough time. I know there hasn't, but that is also because the district court went on different grounds. It might be perfectly appropriate for us, for instance, if we don't agree or don't want to reach the grounds the district court went on, to go back and send it back to the district court and say, look at this form and is this a reasonable form? That might be something we could do to find out whether the form did what you say you have a right to know. In the district court, they spoke about the form and the usefulness of what's in this specific form. As the court below said, it's used to verify medical absences that are common practice among railroad. It advances the purpose of the FRSA to ensure that railroads do not take action against employees who now they know are absent because of orders or treatment plans of physicians. Here, Long Island Railroad, assuming all the subjects that apply to this situation, the Long Island Railroad found out about the absences not only after the absence, but found out about the absence after they took disciplinary action. Well, we say it wasn't disciplinary action, but after they issued a letter of caution and a notice of investigation. It also limits unauthorized absenteeism, which itself, as the district court said, can be the cause of safety issues. I guess the plaintiff argues that the form is unworkable or burdensome because he has a treatment regimen that says on an ongoing basis he should take opioids as needed, essentially. And this would impose a need to get a doctor's note for each time that that's the reason for the absence. So now he's taken these opioids for years. And as I mentioned in there, taking the opioids well after the expiration date of the opioids. This is now, for the rest of his career, potentially, he could say ten years down the road, I took an opioid last night from something that happened ten years ago. I'm not coming to work. And that, to me, cannot be what this statute is about. If a doctor would say, even though this happened ten years ago, doctor said it in a way that is appropriate, and what the form for that is, it'll never matter. But if a doctor says ten years ago you were injured in this way, and this injury continues to cause you pain, and so every once in a while you have to take an opioid, then if a person doesn't come to work, because of that, C-2 covers it directly. It says you can't punish him for it. And the fact that the prescription has run out is evidence, maybe, but doesn't tell us whether it is following a doctor's orders now. And I want to know what is appropriate for you to be sure that the person is following a doctor's order now. He says the form is too complicated. I don't know. The form is in the record. It is not too complicated for an employee to- A relatively brief form. Right. It is not- It comes into play, it wasn't, there was no effort to fill it out. It comes into play when the letter of cautions go out and the plaintiff says, no, no, those were sick days. I just didn't fill out the form. That's how it comes into this case. Right, but the statute can't just allow an employee to do that. I know I'm well past my time. I had six points in my brief. We spent a lot of time on one and one and a half, but the other points are all in the brief. To answer your question, Judge Calabresi, this sick leave form is not a proper FRA form because it doesn't confirm whether or not this medical condition is causing an absence that's related to safety. Is this medical condition a threat to safe railroad operations? It doesn't ask that. It doesn't ask if there's protected activity. It doesn't confirm anything. There are no FRSA forms or policies on the railroad at all. There's nothing. And they can't use a collective bargaining agreement form to merge into a federal statutorily protected absences. And subsection H says, the rights and remedies in this section may not be waived by any agreement, policy form, or condition of employment. They're using a non-FRSA form and policy to waive or negate an employee's federal statutory rights. As far as the legal, if you read C-2 in conjunction with A-2, an employee who follows the instruction of a treating doctor to take a legally prescribed medication is protected. An employee decides to get drunk or shoot heroin or take cocaine on his own, he's not protected. He's not following a doctor's orders. It's nonsense to say that- But you're asking us to interpret A-2 by reading in language from C-2 and C-1 that is not in A-2. And I'm not sure that I've ever, I don't know what canon would permit us to do that. Well, the canon that are cited that you have to read the section as a whole, harmonize its subparts, so as to accomplish the overriding purpose, which is to promote rail safety. How does it promote rail safety for the same medical condition, which is a threat to passengers' lives, to be protected if it's work-related injury, but not if it's off-related? How does that promote rail safety? It doesn't. The overriding purpose is the North Star. Read the subsections together. Harmonize them. The medical department, every single time, he called the medical department. He said, I'm taking this prescribed medication. They said, don't work for 48 hours. He didn't. Now, the medical department did nothing to communicate to any other department that protected activity. And that cannot be a defense. He was waiting for the SLA-28. But that, again, Your Honor, that's a sick leave form. It has nothing to do with 2109. It doesn't establish the protected activity under 2109, that it's a safety-related absence. It could be just a sick form for anything. Do you make anything of the fact that as to the oral surgery, they rescinded the discipline on the basis of something that was not the form? That is, as to one of the things that they disciplined him, the oral surgery, I believe that then, when they submitted a doctor's certificate which was not the form, they actually rescinded so that they acted as if a form had been submitted but it was not. Right. Seven months later, they rescinded that oral surgery and immediately replaced it with another based on the work injury shoulder condition. Yeah, I understand that. But they rescinded that on the basis of something that was a doctor's certificate that was not the form. I'm still focusing on whether there was a form that was needed and what they needed, and I'm interested. I don't think it's determinative, but it is interesting to me that they didn't require the form with respect to that time while they say it is required with respect to something else. Your Honor, what they need is a 2109 policy, forms, code, instruct trained managers. He says that they've been dealing with it, the legal department maybe, but the vice president on down never read it, never heard of it, never done anything to comply with it or change their policies or procedures. This is a deliberate ignorance of a federal safety statute, and it cannot be used as a defense when an employee reports a protected activity to the only department capable of instructing him, the medical department, and then nothing happens, no communication, no coordination, no compliance, and they say, well, you know, we disciplined for sick leave absence. We didn't know we had protected activity. Well, guess why? Because of the deliberate ignorance and the failure to have any policies or forms. Give the employees the means to invoke their statutory right, and they'll do it, but don't use sick leave that's not intended for 2109 safety absence. Thank you both for your arguments. Well argued. That's the last case on the calendar to be argued today, so I will ask the clerk to adjourn court.